## Wytheville

VIRGINIA STATE FAIR ASSOCIATION, INC. v. VIRGINIA
AMUSEMENT CONCESSION CORPORATION

June 11, 1914.

1. FAIR ASSOCIATIONS—*Amusements—Contracts—Novation.*—If a fair
association, for a valuable consideration, grants to an amuse-
ment company the right to exhibit on its grounds certain
wheels, not prohibited by law, without specifying the number
of such wheels, the amusement company has the right to ex-
hibit a reasonable number of such wheels and a subsequent
resolution of the association limiting the number of such wheels
to less than what was reasonable, submitted to under protest
by the amusement company, does not constitute a new contract,
but is itself a violation of the contract between the parties
thereto.

2. FAIR ASSOCIATIONS — *Amusements—Forfeiture.*—An amusement
company which, for value, has been granted the privilege of
exhibiting wheels of a certain class on fair grounds does not
forfeit its right to exhibit such wheels by also exhibiting others
of a forbidden class, where the good can be separated from
the bad.

3. CONTRACTS—*Breach—Damages—Profits.*—In an action by an amuse-
ment company to recover damages for breach of a contract to
permit it to make certain exhibits on the grounds of a fair
association, the profits which the licensee would have made on
sub-contracts actually made by it are sufficiently certain to be
recovered as part of the damages sustained by the amusement
company.

Error to a judgment of the Hustings Court, Part II,
of the city of Richmond, in an action of assumpsit. Judg-
ment for the plaintiff. Defendant assigns error.

*Affirmed.*

The plaintiff by counsel moved the court to give to the jury the following instruction:

## INSTRUCTION No. 1a.

The court instructs the jury that the defendant had the right, by the resolution of October 11, 1911, to designate the character of wheels which the plaintiff could operate, and by said resolution did designate candy wheels, dog wheels and aquariums as proper wheels to be operated by the plaintiff, but the court further instructs the jury that the defendant did not have the right to prohibit the plaintiff from selling the privilege to operate a reasonable number of candy wheels, dog wheels and aquariums.

Therefore, if the jury believe from the evidence that the defendant, by the resolution of October 11, 1911, introduced in evidence, prevented the plaintiff from operating, or selling the privilege to operate, a reasonable number of candy wheels, dog wheels and aquariums, then the court instructs the jury that the defendant committed a breach of its contract, and is liable to the plaintiff for such actual damages as the evidence shows the plaintiff sustained as a result thereof.

And the court further instructs the jury that in determining what would be a reasonable number of said wheels, they may take into consideration all the circumstances surrounding the conduct of said fair, including the size of the defendant's fair grounds, the attendance upon said fair, and the objects and purposes of said fair for the year 1911.

And the defendant by counsel moved the court to give to the jury the following instructions:

## INSTRUCTION No. 1b.

The court instructs the jury that the burden of proof

is upon the plaintiff to show each particular necessary to make out his cause of action by a preponderance of evidence and if the plaintiff has failed to do so, then it is the duty of the jury to find in favor of the defendant.

### INSTRUCTION No. 2b.

The court instructs the jury that if they believe from the evidence that the plaintiff, or any person or persons operating under them, operated upon the grounds of the defendant any devices where money was exchanged for money, or which were contrary to good morals, or objectionable to the defendant, the defendant had the right at any time to close and remove such devices from its grounds without previous notice, assignment of cause, or rebate of purchase money.

And the plaintiff thereby forfeited its right to conduct and operate thereafter upon the grounds of the defendant any of the privileges and concessions granted in section 4 of their said contract concerning upright and flat wheels and other devices of like character; and the jury must find for the defendant.

### INSTRUCTION No. 3b.

The court instructs the jury that even though they may believe from the evidence that the plaintiff had the right under its contract to operate certain upright and flat wheels and other devices of like character, as claimed in its declaration, yet, if they further believe from the evidence that the plaintiff acquiesced in the terms offered it by the defendant, namely, the right to operate certain dog wheels, candy wheels and aquariums, thereby inducing the defendant to believe that such performance was accepted by it as a complete performance of the de-

fendant's obligations under its contract with the plaintiff in this respect it amounts to a waiver of the plaintiff's rights to operate said upright and flat wheels and other devices of like character, as claimed in the declaration, and the plaintiff cannot recover.

## INSTRUCTION No. 4b.

The court instructs the jury that the defendant had the right, under its contract with the plaintiff, to close and remove from its grounds, at any time, any upright and flat wheels and other devices of like character without previous notice, or assignment of cause, and without rebate of purchase money; and further, that if the jury believe from the evidence that the defendant, in the exercise of such right, did close all of the upright and flat wheels and other devices of like character, the defendant was thereafter under no obligation to allow the plaintiff the right to operate any upright and flat wheels, or other devices of like character, and that if the defendant did permit the plaintiff to operate twelve, or more, dog wheels, candy wheels, and aquariums, it was a voluntary act on the part of the defendant which the plaintiff could not question as to the number, or character, and that they must find for the defendant.

## INSTRUCTION No. 5b.

The court instructs the jury that if the plaintiff is entitled to recover in this action, such recovery must be by virtue of the contract sued on and not by virtue of any other subsequent contract that may have been sought to be proved by evidence offered in this case.

## INSTRUCTION No. 6b.

The court instructs the jury that in estimating any

damage to which they think the plaintiff may be entitled in this case, if they think under the instructions herein that the plaintiff is entitled to any damage, they cannot take into consideration any loss of profits arising from any collateral undertakings or enterprises the plaintiff may have entered into with third parties, even though such undertakings were entered into upon the faith of the contract made by the plaintiff with the defendant.

## INSTRUCTION No. 7b.

The court instructs the jury that in order for the plaintiff to recover in this action, the jury must believe from the evidence, first, that the upright and flat wheels and other devices of like character, which the plaintiff installed on the grounds of the defendant corporation, were not in violation of the contract between them, as explained in that instruction, and were not in violation of the law, and that the plaintiff was unlawfully, and contrary to the plaintiff's right under the contract, deprived of the right to operate the same upon the grounds of the defendant corporation by the defendant; and, second, that the plaintiff did not accept a certain number of wheels upon the grounds of the defendant corporation, to-wit, twelve or more dog wheels, candy wheels and aquariums, as a full compliance by the defendant of its contract to allow the plaintiff to operate upright and flat wheels and other devices of like character.

## INSTRUCTION No. 8b.

The court instructs the jury that under the contract between the parties to this suit, the Virginia Sate Fair Association, Inc., had the absolute right, at any time, to order the removal of the upright and flat wheels and

other devices of like character from its premises and that if the jury believe from the evidence that this was done by the association in good faith in the exercise of the power with which the defendant was invested under its said contract, then they must find for the defendant. And the court further instructs the jury that upon the question of good faith of the defendant in ordering the removal of the wheels, etc., from its grounds, the burden of proof is upon the plaintiff to clearly show by a preponderance of evidence that the defendant was guilty of bad faith; and that the burden of proof is not upon the defendant to show that it acted in good faith.

And the court gave the instruction asked for by the plaintiff, and gave the instructions asked for by the defendant numbered 1b, 3b and 7b, but declined to give the instructions asked for by the defendant numbered 2b, 4b, 5b, 6b and 8b and modified instruction No. 2b asked for by the defendant and gave the same as modified as follows:

## INSTRUCTION No. 2b.

The court instructs the jury that if they believe from the evidence that the plaintiff, or any person or persons operating under them, operated upon the grounds of the defendant any devices where money was exchanged for money, or which were contrary to good morals, or objectionable to the defendant, the defendant had the right at any time to close and remove such devices from its grounds without previous notice, assignment of cause, or rebate of purchase money.

And the court thereupon gave the following instruction of its own motion:

## INSTRUCTION No. 9.

The foregoing are all instructions of the court and

they must be read by you and construed together and in the light of each other.

And thereupon the defendant by counsel asked the court to modify instruction No. 1a asked for by the plaintiff and to give the same as follows:

## INSTRUCTION No. 1a.

The court instructs the jury that the defendant had the right by resolution of October 11, 1911, to designate the character of wheels the plaintiff could operate, and by said resolution did designate candy wheels, dog wheels and aquariums proper wheels to be operated by the plaintiff, but the court further instructs the jury that the defendant did not have the right to prohibit the plaintiff from selling the privileges to operate a reasonable number of candy wheels, dog wheels and aquariums; the court instructs the jury that they must consider not only the number of devices which the plaintiff may have been able to sell and dispose of, or the number of similar devices that may have been operated upon the said grounds in other years, but such number only as in their opinion was reasonable in the year 1911, considering all the circumstances governing the case and the purposes for which the fair was created and was conducted. Against such number as the jury may believe to have been reasonable under all these circumstances, the court instructs the jury that they must deduct the number of such wheels as the plaintiff was allowed to operate by the defendant.

In estimating the amount of damage that the plaintiff may be entitled to recover, if the jury believe that they are entitled to recover any damages, the court instructs the jury that they cannot consider the value of the contract for wheels which the defendant had previously ordered closed and removed.

But the court refused to modify said Instruction No. 1a, given for plaintiff, as asked for by the defendant; to which action of the court in giving the instruction No. 1a asked for by the plaintiff, and in refusing to modify the instruction No. 1a of the plaintiff as asked for by the defendant, and in modifying instruction No. 2b, asked for by the defendant, and giving the same as modified and in refusing to give said instructions of the defendant Nos. 2b, 4b, 5b, 6b and 8b, the defendant by counsel excepted.

*D. H. & Walter Leake* and *Page & Leary,* for the plaintiff in error.

*John A. Lamb* and *Brockenbrough Lamb,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The Virginia Amusement Concession Corporation, hereinafter referred to as the amusement company, sued the Virginia State Fair Association, hereinafter referred to as the association, in assumpsit, and recovered a verdict and judgment against it which is before us upon a writ of error.

The association was formed for the purpose of conducting fairs and exhibitions of horses and other live stock, and of agricultural, historical, mining, electrical and mechanical products as a means of developing the resources of the State. Its grounds are located in the county of Henrico, near the city of Richmond, where it holds its exhibitions in the month of October of each year. It is the custom of the association to let out each year, for the amusement of its patrons, the right or privilege of conducting certain upright or flat wheels, at

which toys and other things of trivial value are given as prizes, and as the subject rather invites a violation of the law, the association exacts contracts from the parties to whom it grants these rights and privileges, whereby it is intended that the association shall be placed in a position of absolute control over the situation.

On September 25, 1911, the association entered into a contract with the amusement company which gave to the amusement company the privilege of conducting upon the grounds of the association "upright and flat wheels and other devices of like character, provided the same are not in violation of the law, and further provided that the said party of the first part shall be the sole judge as to the meaning of the second subject of this paragraph, that is 'other devices of like character;' it is expressly understood that no permission is hereby given to run, or operate, any devices where money is exchanged for money, or which is contrary to good morals, or objectionable to said party of the first part."

On October 8, 1911, the first day of the fair of that year, the officers of the association claim to have observed upon the grounds of the association a large number of wheels where money was exchanged for money, and other wheels where candy and birds were given out as prizes. The attention of the amusement company was called to the situation, and its manager was directed at once to remove the gambling wheels, as they were in violation of his contract. On the following day, that is to say on Tuesday, the 9th of October, 1911, the second day of the fair, it was observed by the officers of the association that the amusement company still permitted gambling to go on, and thereupon emphatic instructions were issued that it was to be stopped at once, or that the association would take the matter into its own hands. As a result of this conduct and after negotiations be-

tween the parties in interest, the executive committee of the association, on the 10th of October, unanimously adopted a resolution allowing the company to operate twelve wheels, to be divided among dog wheels, candy wheels and aquariums, the location of these wheels to be decided by the officers of the association, and all other wheels and booths to be removed by nine o'clock a. m. on October 11. On October 12, 1911, the following note was addressed by the president of the amusement company to the association:

"Gentlemen:

"We have today paid the last note for $2,000 given by us as provided by our contract, but wish to state that we pay this note under protest, and insist same is not due you, because you have violated your contract with us."

On April 10, 1912, the amusement company filed its declaration in assumpsit, claiming $5,000 damages. The declaration contained all of what are known as the common counts, and a special count in which it sets out that it entered into a certain contract with the association, whereby, in consideration of $5,750, it was agreed that the plaintiff should have the exclusive privilege of conducting upon the grounds of the association upright and flat wheels and other devices of like character, provided the same were not in violation of law, which privilege was of great value to the plaintiff: that it has at all times fulfilled and performed the contract on its part, but that the association violated and failed to keep the contract on its part, and refused to give to the plaintiff the privilege of conducting upon the grounds of the association flat wheels and other devices of like character which were not in violation of the law.

To this declaration the defendant pleaded the general issue and a trial was had which resulted in a verdict and judgment for the plaintiff; and thereupon the defendant

obtained a writ of error, and we are called upon to review certain rulings of the trial court.

The first error assigned by the association rests upon the claim that the *allegata* and the *probate* do not agree: that the original contract was abrogated, or at least modified, by the resolution of the association above adverted to, which was accepted by the amusement company, and upon which both parties thereafter acted and by which their mutual rights and obligations are to be ascertained and determined. The contention upon the part of the defendant in error is, as we understand it, that its right of action rested upon the original contract and that the so-called modification brought about by the resolution of October 10, 1911, was in derogation and violation of the rights of defendant in error under its contract, and does not constitute a new and independent cause of action, except in so far as it is evidence of the denial to the defendant in error of the rights and privileges granted to it under the terms of the original contract. Defendant in error concedes that the "Fair Association had the right under its contract to close and remove any wheel the character of which was objectionable to it; that it could do so capriciously or at its whim, provided only the character of the wheel was objectionable to it." The defendant in error, however, contends that the resolution of the association permitting twelve wheels to be operated is an admission that there was no objection to the character of such wheels, and that if lawful in character and free from objection, no limitation being imposed as to their number, it became the right of the amusement company to operate a reasonable number of such wheels, and upon this theory evidence was offered and admitted to show what, under the circumstances of the case, would be a reasonable number of such wheels to exhibit upon such an occasion; and in this we think there was no error.

The case upon the first assignment of error, therefore, seems to be as follows: The association had granted to the amusement company the right to exhibit certain wheels without specifying the number, the only limitation being that they should not be in violation of the law, and that as to other devices of like character the association should be the sole judge. For these privileges a large consideration had been paid by the amusement company to the association. After this contract was entered into the association undertook to limit the number of wheels to be exhibited—that is to say, to limit the number of wheels which could be operated not in violation of law, for it is not to be presumed that they licensed or permitted the operation of any number of wheels, however small, if the operation of the wheels was a violation of law. If that be true, and if under the contract the amusement company had the right to operate a reasonable number of wheels, then the resolution of the association of the 10th of October, 1911, was in itself a violation of the original contract to which the defendant in error submitted under protest, and does not constitute a new contract by which its rights were to be measured and upon which its right of action is founded.

The second assignment of error is really covered by what has been said with respect to the first, for if a proper construction of the contract permitted the defendant in error to exhibit a reasonable number of wheels, it follows of course that evidence was properly admitted to enable the jury to determine that question.

Instruction No. 1a, given at the instance of defendant in error, is here objected to. That instruction tells the jury that the association had the right by its resolution of October 10, 1911, to designate the character of wheels the plaintiff could operate, and by said resolution did

designate candy wheels, dog wheels and aquariums as proper wheels, but that the association did not have the right to prohibit the plaintiff from operating a reasonable number of such wheels—a proposition which we have already sufficiently considered.

By instruction No. 2b, as given by the court, the jury were told, that if the amusement company, or any person under them, operated upon the grounds of the defendant any devices where money was exchanged for money, or which were contrary to good morals, or objectionable to the defendant, the defendant had the right at any time to close and remove such devices from its grounds without previous notice, assignment of cause, or rebate of purchase money. This instruction was asked for by the plaintiff in error, and the court gave so much of it as we have adverted to, but refused to tell the jury, as plaintiff in error requested, that the amusement company thereby forfeited its right to operate upon the grounds of the defendant any other privilege or concession granted it under section 4 of that contract.

We think the court was right in amending the instruction. In so far as the amusement company was acting in violation of its contract and doing what was forbidden by law or contrary to good morals or objectionable to the association, the right of the association to put an end to such conduct is fully maintained; but if the good was separable from the bad, surely the innocent ought not to be punished for the guilty. The amusement company had rented out or sold a large number of these privileges. From such sales and such sales only it could derive its profit from the business it was transacting. Some of its subordinate vendees may have been acting in violation of the contract into which they had entered, and they should have been suppressed, but those who were acting in conformity with the spirit and letter of their contracts

should have been protected, and this the court undertook to do and rightly so. It is obvious that there was no such relation between a wheel at which money was exchanged for money, which was contrary to law, and a wheel at which some innocent trifle was given in exchange as that the one could not be operated without the other.

The refusal of the court to give instruction No. 4b is assigned as error. This instruction asserted the right upon the part of the defendant to close and remove from its grounds at any time any upright and flat wheels and other devices of like character, without previous notice and assignment of cause, and without repayment of purchase money. This power, if it existed in defendant, is to be deduced from the terms of the fourth section of the contract which has already been adverted to. The association granted to the amusement company the privilege of conducting upon its grounds upright and flat wheels and other devices of like character, provided the same were not in violation of law. As we have already said, it is conceded by the association that the twelve wheels which the amusement company was permitted to operate were not in violation of law, and if such was the fact under the contract the defendant in error had the right to operate a reasonable number of such wheels; there being no limitation as to number in the terms of the contract. Now to say that the association had the power to grant the privilege to run wheels which were not in violation of law, to receive the money for the privilege, and then to abrogate the privilege arbitrarily when no law had been violated and nothing done in contravention of good morals or which could be reasonably objected to by the association, is utterly repugnant to every sense of justice and cannot receive our approbation.

Assignment of error No. 6 is to the refusal of the court to give instruction No. 5b, the object of which was to tell the jury, by implication at least, that the resolution of the association of October 10, 1911, constituted a new contract—a subject which we have already sufficiently considered.

We think the court rightly refused instruction No. 6b, which refers to the measure of damages, under the facts of this case and upon the authority of *Consumers Ice Co.* v. *Jennings,* 100 Va. 719, 42 S. E. 879.

Assignment of error No. 8 is to the refusal of the court to grant instruction No. 8b. What we have already said sufficiently disposes of this assignment of error.

We are of opinion that there was no error in the admission of testimony, or in the instructions granted and refused; that considered as upon a demurrer the evidence is sufficient to support the verdict; and that upon the whole case the judgment should be affirmed.

*Affirmed.*